UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TRAVIS LEE DAVIS-ROWLAND,

                Petitioner,              Case No. 1:17-cv-131

v.                                 Honorable Janet T. Neff

SHIRLEE HARRY,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Travis Lee Davis-Rowland is presently on parole. On November 14, 2013, an Ingham County Circuit Court jury, found Petitioner guilty of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84. On December 18, 2013, the court imposed a sentence of 42 to 180 months' imprisonment. Petitioner was paroled on September 28, 2017. He is scheduled to be discharged from supervision on December 28, 2018.

On February 7, 2017[1], Petitioner filed his habeas corpus petition raising 7 grounds for relief, as follows:

    I.      There was insufficient evidence to convict Petitioner of assault with intent to commit great bodily harm less than murder.

    II.     Testimony about the Petitioner's alleged lack of cooperation with law enforcement was inadmissible and denied Petitioner a fair trial.

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

III.  Petitioner was denied a fair trial by the late endorsement of Laurie Blevins as a witness.

IV.  The jury was improperly instructed by the trial court denying Petitioner the right to a fair trial.

V.  The case was submitted to the jury on the basis of alternate theories that denied Petitioner due process and fundamental fairness.

VI.  Petitioner was denied the right to effective assistance of counsel.

VII.  The prosecutor suppressed exculpatory evidence and exceeded the bounds of a proper argument based on the evidence.

(Pet., ECF No.1, PageID.6-15.)  Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they are unexhausted, non-cognizable, procedurally defaulted, and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.  Factual allegations

During the early morning hours of May 22, 2013, Amber Fountain, Anna Karpinsky, Xavier Claudio (Anna's boyfriend), Christopher Claudio (Xavier's brother), and Petitioner were drinking and smoking marijuana in Anna's upstairs apartment on South 8th Street in Lansing, Michigan.  (Trial Tr. I, ECF No. 10-5, PageID.258-259.)  Amber, Anna, Xavier, and Petitioner began playing the card game "Spades."  (*Id*., PageID.259-260.)  Amber accused Petitioner of cheating.  An argument ensued.  (*Id*., PageID.260.)  Anna, and then Amber, told Petitioner to leave.  (*Id*.)  On Petitioner's way out the door, he threatened Amber: "Wait until you get outside."  (Trial Tr. II, ECF No. 10-6, PageID.285-286, 294, 298.)  Amber took a step out the

2

door after Petitioner.[1]  Anna claims Petitioner must have then grabbed Amber and either threw her or pulled her down the stairway.  (*Id*., PageID.285-286.)  Amber suffered brain injuries, a fractured skull, lacerations, and abrasions.  (*Id*., PageID.273-277.)

Although Anna, Xavier, and Claudio were all a short distance away when Amber went down the stairs, none of them actually saw Petitioner lay a hand on her.  (*Id*., PageID.288, 294-295, 299.)  Based on Amber's movement, however, each of the witnesses surmised that Amber had not fallen; rather, she had been pulled (or shoved) down the stairs.  (*Id*.)

Petitioner did not testify.  Indeed, after the prosecution rested, the defense rested as well.  Defense counsel argued that it was just as likely that Amber, who was unquestionably drunk, went out the door to confront Petitioner and then fell down the stairs.

The prosecutor focused on Petitioner's behavior after the incident to support his theory that Petitioner caused Amber's tumble down the stairs.  All of the witnesses testified that when they came out of the apartment they saw Amber at the base of the stairs and Petitioner fleeing around the corner of the house.  (*Id*., PageID.287, 295, 300.)  One of Petitioner's neighbors, Laurie Blevins, testified that Petitioner had asked her to communicate an apology to the people at Anna's apartment for what had happened on the stairway.[2]  (*Id*., PageID.282-283.)

Moreover, when the police located Petitioner at his home a few days later, Petitioner would not come out to speak with them.  (Trial Tr. I, ECF No. 10-5, PageID.248.)  Instead, he poked his head out of an upstairs window.  (*Id*., PageID.249.)  Officers asked if

---

[1] Amber did not testify that she took a step out the door.  She testified that Petitioner reached into the room and pulled her out by the hair.  (Trial Tr. I, ECF No. 10-5, PageID.261.)  Anna, however, testified that Amber took a step out before she was pulled down the stairs.  (Trial Tr. II, ECF No. 10-6, PageID.285-286.)

[2] Laurie Blevins had not been listed as one of the prosecutor's witnesses.  Nonetheless, the trial court permitted her testimony because the testimony from Ms. Blevins' son Bradley came as a surprise to the prosecutor.  Based on the police report, the prosecutor expected Bradley to testify he had been present and heard Petitioner's request that an apology be communicated.  (Trial Tr. II, ECF No. 10-6, PageID.281-282.)  When Bradley testified otherwise, (*Id*., PageID.280), the prosecutor sought permission to add Ms. Blevins as a witness.

Petitioner was Travis Davis-Rowland.  (*Id.*)  The officers informed Petitioner they were investigating an assault.  (*Id.*)  Petitioner responded by posing hypothetical questions: "Well, what if I was Travis Rowland?" and "What if I was involved in an assault?" and "[W]here did this happen at?"  (*Id.*)  Ultimately Petitioner refused to come to the door, so the police officers left.  (*Id.*, PageID.249-250.)  The prosecutor argued that those were not the questions one would ask if Amber had simply slipped and fallen down the stairs on her own.  (Trial Tr. II, ECF No. 10-6, PageID.307, 311.)  Instead, Petitioner's demeanor and conduct in response to the investigators demonstrated a consciousness of guilt.  (*Id.*)

The jury deliberated for about an hour before returning its verdict.

On direct appeal to the Michigan Court of Appeals, Petitioner's initial brief, filed with the assistance of counsel, raised the first three of his seven habeas issues.  Petitioner raised the remaining four issues in a Standard 4 brief.  By unpublished opinion issued April 16, 2015, the court of appeals affirmed Petitioner's conviction and sentence.  (Mich. Ct. App. Op., ECF No. 10-8, PageID.329-334.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the seven issues he had raised in the court of appeals.  Petitioner was permitted to amend his application to include an issue regarding ineffective assistance of appellate counsel.   By order entered November 24, 2015, the Michigan Supreme Court denied leave to appeal.

Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court.  Instead, he filed his habeas corpus petition in this Court.

II.    <u>AEDPA standard</u>

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Sufficiency of the evidence (Issue I)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This

standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [Court of Appeals'] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the *Jackson* standard when it rejected Petitioner's challenge to the sufficiency of the evidence:

> Defendant first argues that the evidence was insufficient to support his conviction of assault with intent to do great bodily harm because none of the witnesses saw him pull Fountain down the stairs. We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). In reviewing a sufficiency claim, we view the evidence in a light most favorable to the prosecution and consider whether a rational trier of fact

could find that the defendant committed the crime charged beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Circumstantial evidence, and the reasonable inferences arising from it, may be sufficient to support a conviction beyond a reasonable doubt. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

Although no witnesses directly observed defendant pull Fountain down the stairs, a rational jury could find that he did so on the basis of the evidence presented. Witnesses testified that they heard defendant tell Fountain, "Wait until you come outside," following an argument. Defendant argues that Fountain could have simply fallen down the stairs because she was intoxicated. However, Xavier and Cristobel both testified that Fountain resisted an apparent tug and leaned backwards before she fell down the stairs. Fountain testified that she remembered someone pulling her hair before rolling down the stairs. Karpinski, Xavier, and Cristobel all testified that they saw defendant run from the scene while Fountain's body was lying at the bottom of the stairs.

Defendant argues that the prosecutor had to prove two theories because Fountain testified that she was pulled back by her hair while Xavier and Cristobel testified that Fountain was pulled forwards. Regardless of the direction of the pull, the evidence was sufficient to demonstrate that defendant's actions initiated Fountain's fall. Because a rational jury could reasonably infer from the evidence presented that defendant intended to cause Fountain great bodily harm, and that his actions caused her injuries, the evidence was sufficient to support his conviction.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.329-330.)

Petitioner contends that the Michigan Court of Appeals oversimplified Petitioner's argument. Petitioner claims his point was not that there was a fundamental inconsistency between the direction of the pull depending on which witness's testimony the jury credited, but that there were myriad irreconcilable inconsistencies that called into question the credibility of each of the accounts, and precluded reliance on the testimony of the victim or any of the witnesses to prove the necessary elements of the offense beyond a reasonable doubt. Petitioner's argument is premised on the notion that the credibility of a witness is a binary issue: a witness is either credible or incredible. If the jury credits one witness's testimony it must discredit all of another witness's testimony if there are any inconsistencies between the two accounts.

Petitioner is correct in noting many inconsistencies between the stories told by the victim and the other three witnesses at trial, as well as differences between the testimony provided at trial and the preliminary examination.  Petitioner suggests one cannot just pick and choose credible details from the varying accounts; but, he is wrong.  It is the jury's job to pick and choose, to resolve those inconsistencies.  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) ("It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony."); *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) ("[W]e do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury . . . we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.")

Did the Petitioner made sexual advances on the victim; when did the dispute between them first arise; did the card game rules dispute occur before or while they were playing cards; what was said, when, and by whom; who was in the room; what were the weather conditions; how intoxicated was the victim; was the door open or closed; which direction was the victim pulled; and where was Petitioner when the witnesses exited the apartment—those were all points of inconsistency the jurors were called upon to consider.  Nonetheless, as the Michigan Court of Appeals noted, no matter how the jurors might have resolved those inconsistencies, there was sufficient evidence presented that the jury could "reasonably infer . . . that defendant intended to cause [Amber] great bodily harm, and that his actions caused her injuries."  (Mich. Ct. App. Op., ECF No. 10-8, PageID.330.)  That determination is not contrary to, nor is it an unreasonable application of, the *Jackson* standard; and, the factual determinations upon which the conclusion is based are reasonable.  Accordingly, Petitioner's challenge to the sufficiency of the evidence is without merit.

9

## IV.    Petitioner's refusal to cooperate with the police

Petitioner argues that it was improper for the trial court to admit evidence regarding his refusal to cooperate with police when they visited Petitioner's home.  The prosecutor elicited testimony from Officer Bryan Curtis regarding the police visit to Petitioner's home on May 27, 2013.  Officer Curtis testified that he and Sergeant Cressman went to Petitioner's front door and knocked.  (Trial Tr. I, ECF No. 10-5, PageID.248-249.)  He posed questions to Petitioner when Petitioner poked his head out of an upstairs window.  (*Id*.)  Officer Curtis testified that Petitioner refused to answer questions and refused to come to the door.  (*Id*.)  The prosecutor never asked about Petitioner's invocation of his right to remain silent or his right to counsel; defense counsel did.  (*Id*., PageID.249) ("Q: Okay. And he did at some point mention to you that he would talk to you if a lawyer was present, correct? A:  Yeah. He actually—").  The officer's response was interrupted by an objection from the prosecutor.  Following a bench conference, the trial court struck the counsel's question and the officer's response and ordered the jury not to consider it. (*Id*.)  Petitioner's request for counsel, if indeed there were such a request, was never mentioned again.

There is no testimony of record regarding the entire course of the conversation between police and Petitioner.  Petitioner, however, provided his recollection of the exchange in his application for leave to appeal filed in the Michigan Supreme Court.  (ECF No. 10-9, PageID.437-439.)  Petitioner's unsworn account indicates that the officers questioned Petitioner only until "he asked for a lawyer and [then] they left." (*Id*., PageID.437.)  Petitioner even quotes the exchange:

Police:          Is your name Travis?

Petitioner:     Why?

Police:          Can you show us some ID?

Petitioner:      You know who I am, you're at my house.  Tell me what you want.

Police:          We need to verify who you are first, just come outside.

Petitioner:      Absolutely not.

Police:          Why won't you come out?

Petitioner:      Because sergeant, you are not my friends.

Police:          Can you just come to the door and show us your ID?

Petitioner:      Let's say I am who you're looking for.  What would you want to talk about?

Police:          Are you Travis?

Petitioner:      Yes, now what do you want?

Police:          Can we see some ID?

Petitioner:      I'm going to close the window.

Police:          Can you tell us anything about an assault that happened recently?

Petitioner:      You're going to have to be more specific.

Police:          This was May 21st around 3 in the morning.

Petitioner:      Well the thing is I've been to prison before and if I'm a suspect and you don't have a warrant then I'm not answering any questions without a lawyer.  Get me a lawyer and we can talk.

Police:          It will be easier if you just come outside.  We're just trying to figure out what happened.

Petitioner:      Easier for you.  You're not my friends.

Police:          We'll have a warrant when we come back.

Petitioner:      That's fine.  Bring a lawyer too.  Have a nice day.

(*Id*., PageID.438-439.)  The only part of the exchange which the prosecutor presented as evidence of,  or argued as demonstrating, Petitioner's lack of cooperation was that part occurring prior to Petitioner's "request" for counsel.

The Michigan Court of Appeals considered the issue primarily as a question under the Michigan Rules of Evidence:

> Defendant claims that the lower court improperly admitted evidence of his lack of cooperation with a police investigation before his arrest.  Specifically, defendant argues that his silence during the police investigation was not admissible as a tacit admission or adoption following an accusation.  Defendant did not object to the introduction of this evidence at trial, so our review is limited to plain error affecting defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).
>
> Relevant evidence is generally admissible.  MRE 402; *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003).  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.  A defendant's silence following an accusation is inadmissible as a tacit adoption or admission under the hearsay exception, MRE 801(d)(2)(B), "unless the defendant has manifested his adoption or belief in its truth."  *People v Solmonson*, 261 Mich App 657, 664-665; 683 NW2d 761 (2004). However, evidence of demeanor and nonresponsive statements or conduct during a police investigation is admissible to demonstrate a consciousness of guilt.  Id. at 666-667.
>
> In this case, the police came to defendant's house and knocked on his door, but defendant refused to open the door, instead sticking his head out of an upper level window.  Defendant refused to answer when the police asked if his name was Travis Davis-Rowland.  Officers told defendant they were investigating an assault, and defendant responded by stating, "Well, what if I was Travis Rowland?" and, "What if I was involved in an assault?"  The police left when they determined defendant was uncooperative.  MRE 801(d)(2)(B) was not implicated here because, during the police investigation, defendant was not accused of assaulting Fountain and did not manifest an adoption of the truth of the officers' questions.  The prosecutor did not attempt to use defendant's silence against him, but rather emphasized his uncooperative conduct and statements.  Evidence of defendant's lack of cooperation with the police was relevant to demonstrate his consciousness of guilt.  *Solmonson*, 261 Mich App at 666-667.  Moreover, the evidence was not unfairly prejudicial because it pertained directly to defendant's guilt or innocence and was damaging only to the extent that it genuinely illustrated defendant's response to the police investigation of the assault. See *People v McGhee*, 268 Mich

App 600, 614; 709 NW2d 595 (2005).  Accordingly, the trial court did not plainly err in admitting the evidence.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.330-331.)

To the extent Petitioner intends to challenge admissibility in violation of a state rule of evidence, he is not entitled to habeas relief.  The extraordinary remedy of habeas corpus lies only for a violation of the United States Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.

But, Petitioner's challenge in this Court is broader.  Here, Petitioner contends that without regard to whether the evidence is admissible under the state rules, it should be excluded as a violation of his Fifth Amendment right against self-incrimination.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).  Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid

13

*Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Texas v. Cobb*, 121 S. Ct. 1335, 1342 (2001) (quotation and citation omitted).

When a criminal defendant claims that his confession was rendered involuntary by police coercion, the court must inquire whether, considering the totality of the circumstances, the conduct of law enforcement officials overbore the will of the accused. *See Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). A suspect's state of mind, standing alone, cannot render a statement involuntary. Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *See Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986). Typically, findings of coercive police conduct involve brutality or threats of physical coercion. *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991) (threats of physical violence); *Greenwald v. Wisconsin*, 390 U.S. 519 (1968) (defendant interrogated for eighteen hours without food or sleep while on medication); *Beecher v. Alabama*, 389 U.S. 35 (1967) (gun held to head of wounded suspect to extract confession); *Cooper v. Scroggy*, 845 F.2d 1385 (6th Cir. 1988) (officer struck defendant, failed to take steps to change coercive environment, and other detective threatened defendant). Nevertheless, a confession may be rendered involuntary if it is the product of psychological pressure or coercion sufficient to overbear the will of the accused. *See Fulminante*, 499 U.S. at 287-88. Among the circumstances to be reviewed by the habeas court are "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health." *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted).

14

Where police were outside Petitioner's home, speaking with Petitioner inside the home, none of the coercive circumstances that might call into question the voluntariness of a "confession" are present.  In *United States v. Panak*, 552 F.3d 462 (6th Cir. 2009), the court described the significant differences between an in-home interrogation and one at the station house:

> If a home is a "castle," 3 W. Blackstone, Commentaries on the Laws of England 288 (1768), a secure redoubt from the cares of the world, it presumably is the one place where individuals will feel most unrestrained in deciding whether to permit strangers into the house, in moving about once the police are there, in speaking as little or as much as they want, in curbing the scope of the interview or in simply asking the officers to leave.  It is the rare homeowner who has not exercised these types of control at some point in encountering uninvited visitors. No doubt, some individuals may find it more difficult to do these things during a visit by the police.  But all individuals, the meek and the brazen alike, generally will find it easier to exercise such control on their home turf than at the station house.

> Recognizing the differences between these settings, we have noted that, "when police question a suspect in a residence," the encounter "often" will "not rise to the kind of custodial situation that necessitates *Miranda* warnings."  *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998); *accord Coomer v. Yukins*, 533 F.3d 477, 486 (6th Cir. 2008); *cf. United States v. Griffin*, 922 F.2d 1343, 1355 n. 15 (8th Cir. 1990); 2 Wayne R. LaFave et al., Criminal Procedure § 6.6(e) (3d ed. 2007).  In *Miranda* itself, the Court quoted from a police manual that contrasted the differences between interrogations at a station house and the individual's home and emphasized the psychological advantages of station-house interrogations:

> > If at all practicable, the interrogation should take place in the investigator's office or at least in a room of his own choice.  The subject should be deprived of every psychological advantage.  In his own home he may be confident, indignant, or recalcitrant.  He is more keenly aware of his rights and more reluctant to tell of his indiscretions of criminal behavior within the walls of his home. Moreover, his family and other friends are nearby, their presence lending moral support. In his office, the investigator possesses all the advantages.

> *Miranda*, 384 U.S. at 449–50, 86 S.Ct. 1602 (internal quotation marks omitted).  In later explaining that the *Miranda* requirements do not apply to a non-custodial interview in a person's home, even though the individual has become the focus of an investigation, the Court reasoned that an important factor underlying *Miranda*

was the interrogator's goal of "isolating the suspect in unfamiliar surroundings 'for no purpose other than to subjugate the individual to the will of his examiner.'" *Beckwith v. United States*, 425 U.S. 341, 346 & n. 7 (1976) (quoting *Miranda*, 384 U.S. at 457, 86 S.Ct. 1602).  These concerns simply do not apply to most in-home interrogations, and both parties to this case as a result agree that an in-home encounter between the police and a citizen generally will be non-custodial.

*Panak*, 552 F.3d at 465-466.[3]  In-home interrogations may be non-custodial even if the individual interviewed is the "focus" of an investigation.  *Stansbury*, 511 U.S. at 323.  Petitioner was not restrained in any way by the police.  His interrogation was non-custodial and he was not entitled to the *Miranda* warnings.

The Sixth Circuit has held that the use of even pre-arrest silence as substantive evidence is barred by the Fifth Amendment.  *See Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000) (granting habeas relief); *see also Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009) (recognizing continuing viability of *Combs* ).  Presumably, the Sixth Circuit would reach the same result with respect to a pre-arrest request for counsel.  The Supreme Court, however, has never held that comment on a petitioner's non-custodial, pre-arrest silence, or non-custodial, pre-arrest request for counsel, implicates any constitutional right.  *Jones v. Trombley*, 307 F. App'x 931, 933 (6th Cir. 2009) ("The constitutionality of using a defendant's pre-*Miranda* silence as substantive evidence of guilt ha[s] not been addressed by the Supreme Court."); *see also Mitchell v. Lafler*, 118 F. App'x 24, 27 (6th Cir. 2004) ("The lack of a Supreme Court decision regarding whether the prosecution may introduce evidence of a defendant's pre-arrest silence during its case in chief precludes federal habeas relief in this matter.").  Therefore, it cannot be said that the state court's rejection of Petitioner's challenge is contrary to, or an unreasonable application of, clearly established federal

---

[3] The circumstances here and in *Panak* stand in contrast to those described by the court in *United States v. Ray*, 690 F. App'x 366 (6th Cir. 2017).  In *Ray*, the defendants were handcuffed and ordered to face a wall while officers executed a search warrant on their home.  When officers posed questions under those circumstances, it was deemed a custodial interrogation requiring *Miranda* warnings.

law.  Petitioner is not entitled to habeas relief with regard to evidence of his pre-arrest conduct, statements, or requests

## V.    The late endorsement of witness Laurie Blevins

Petitioner next contends that his trial was rendered unfair by the prosecutor's late endorsement of Laurie Blevins as a witness.  Petitioner claims the late endorsement violated MICH. COMP. LAWS § 767.40a(3), which requires the prosecutor to send defendant's counsel a list of witnesses not less than thirty days before trial.  The Michigan Court of Appeals rejected Petitioner's claim as a matter of state law, concluding that the trial court had not abused its discretion in finding good cause existed for the late endorsement.  (Mich. Ct. App. Op., ECF No. 10-8, PageID.331.)  Once again, an inquiry into whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.

Petitioner's also describes his challenge to the prosecutor's action or, more accurately, inaction, as a violation of the prosecutor's duty to disclose exculpatory evidence. (Pet'r's Appeal Br., ECF No. 10-8, PageID.366.)   "[U]nder *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution has the 'duty under the due process clause to insure that 'criminal trials are fair' by disclosing evidence favorable to the defendant upon request . . . .'"  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  But, that duty does not create an obligation to name all witnesses before trial:

> It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably.  There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote recently, "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded. . . ." *Wardius v. Oregon*, 412 U.S. 470, 474 (1973).

17

*Weatherford*, 429 U.S. at 559; *see also Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th Cir. 2002) (court held that prosecutor's failure to disclose expert rebuttal witness did not raise a "constitutional violation cognizable on habeas").  Moreover, *Brady* does not require the prosecutor to "deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985).  Failure to disclose Laurie Blevins as a witness would not violate *Brady* or Petitioner's due process rights, because her testimony was not "favorable to the accused."  *Lorraine*, 291 F.3d at 441-42.

Finally, as noted by the Michigan Court of Appeals, "[t]he police report stated that Bradley Blevins was present and heard defendant apologize to Laurie Blevins for his part in Fountain's assault."  Petitioner offers no evidence to overcome this presumptively correct determination. Thus, neither the fact of the apology nor the communication of it to Laurie Blevins was a surprise to Petitioner or his counsel.

The *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).  "[W]here the alleged Brady evidence is available to the defense, there is really nothing for the government to disclose."  *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

Petitioner has failed to demonstrate that his trial was rendered unfair by the late endorsement of Laurie Blevins as a witness.  The state appellate court's rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief.

## VI.    Improper jury instructions

Petitioner raises four challenges to the jury instructions. Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Not every claimed instructional error rises to the level of a constitutional violation.  "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly.  *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

### A.    Self-defense

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the

elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

Petitioner contends he was denied the opportunity to present a complete defense here.  He claims the trial court should have instructed the jury on the elements of the affirmative defense of self-defense.  The Michigan Court of Appeals concluded otherwise:

> In order to instruct a jury on a particular theory of the case, the evidence presented at trial must support the theory. *People v Johnson*, 171 Mich App 801, 804; 430 NW2d 828 (1988).  At trial, defendant did not present a self-defense theory, but instead argued that Fountain was injured because she was intoxicated and upset, and that no one saw a physical altercation.  Because evidence supporting a self-defense theory was not presented at trial, the trial court's decision to exclude a self-defense jury instruction was not erroneous.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.332.)

There is no clearly established federal law mandating that a state court issue an instruction on self-defense. *Phillips v. Million*, 374 F.3d 395, 397-98 (6th Cir. 2004) (holding that no clearly established Supreme Court requires a state court to issue an instruction on self-defense).

The Sixth Circuit has concluded that the instruction is constitutionally required under certain circumstances. *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002) (holding that the right of a defendant to claim self-defense is a fundamental right and that, where sufficient evidence to support the charge is introduced, the failure to give the charge violates his due process right to present a complete defense). Circuit authority, however, does not suffice to clearly establish federal law for purposes of the AEDPA. *See Lopez*, 135 S. Ct. at 4 ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).[4]

Moreover, the *Taylor* court's analysis is premised on the fact that sufficient evidence to support the defense of self-defense had been admitted. The Michigan Court of Appeals determined that Petitioner had failed to submit evidence supporting his claim of self-defense. Indeed, his defense was based on the likelihood that Amber had tumbled down the stairs because she had acted abruptly when she was drunk and upset, not because Petitioner had any role in her fall, justified or not. The state appellate court's determination is well supported in the record. Thus, Petitioner has failed to demonstrate that the state court's determination is contrary to, or an unreasonable application of, clearly established federal law, or that the state court's underlying

---

[4] The Sixth Circuit's analysis in *Taylor* appears to be exactly the sort of "refining" or "sharpening" of a general principle into a specific legal rule that *Marshall* and *Lopez* cautioned against. The *Taylor* majority relied on Supreme Court authority with respect to the general rule regarding a defendant's right to present a complete defense, and then announced a necessary corollary of that rule that a defendant has the right to have the jury instructed on his or her defense, under appropriate circumstances. *Taylor*, 288 F.3d at 851-852. The *Taylor* majority looked to deeply rooted tradition, federal criminal law not expressly grounded in the United States Constitution, and the conclusions of other Courts of Appeals to support its corollary, but not to United States Supreme Court constitutional decisions. *Id.* at 852-853. The *Taylor* majority stated: "The earth is not flat, nor does the sun revolve around it, but we do not need to be told that by the Supreme Court in order for us to apply it in a case." *Id.* at 853. Judge Boggs, in his concurring opinion, thought the majority had stepped beyond the bounds of the AEDPA: "We must find that this fundamental constitutional rule has been clearly established by Supreme Court precedent. It has not been." *Id.* at 854-855 (footnote omitted).

factual determinations are unreasonable on the record.[5]  Accordingly, Petitioner is not entitled to habeas relief regarding the absence of a self-defense instruction.

### B.    The police report

About fifteen minutes into their deliberations, the jurors asked the court for the police report of testifying officer Angela Matthews.  (Trial Tr. II, ECF No. 10-6, PageID.315.) The court replied in writing: "The police report is not admissible at trial, and you may only consider the facts and evidence presented at trial."  (*Id.*)  The prosecutor and defense counsel agreed to the response.  (*Id.*)  Petitioner opines that the jury should have been provided Officer Matthews' testimony.   Petitioner does not identify a constitutional dimension to this claim.  The Michigan Court of Appeals rejected Petitioner's conclusion that the jury was confused and noted that the court's response to the jury's question was proper and that any challenge was waived by counsel's concurrence in the propriety of the response.  Petitioner has failed to demonstrate how the state court's determination is contrary to, or an unreasonable application of clearly established federal law.  Accordingly, he is not entitled to habeas relief on this issues.

### C.    Arguments are not evidence

The Michigan Court of Appeals concluded that the trial court properly instructed the jury that the statements and arguments of the attorneys were not evidence.  (Mich. Ct. App. Op., ECF  No. 10-8, PageID.332.)  Perhaps for that reason, in his last challenge to the jury instructions, Petitioner shifts the focus of his arguments to the timing of the instruction that arguments are not evidence.  (Pet'r's Br., ECF No. 4, PageID.43-44.)   Petitioner contends the instruction should have been given before, rather than after, closing arguments.  (*Id.*)

---

[5] Petitioner's claim that Xavier and Cristobal Claudio testified that they witnessed a struggle not initiated by Petitioner, (Pet'r's Br., ECF No. 4, PageID.42), or that such testimony supported a claim that Petitioner was retreating and not the aggressor, can only be ascribed to a fanciful reading of the trial transcript.

Petitioner supports his argument with the oft-quoted sentence from *Krulewitch v. United States*, 336 U.S. 440 (1948):  "The naive assumption that prejudicial effects can by overcome by instructions to the jury, [citation omitted] all practicing lawyers know to be an unmitigated fiction."  *Id*. at 453.[6]  These words have been used when identifying categories of evidence that are so prejudicial that they are incurable by instruction.  *See, e.g., Bruton v. United States*, 391 U.S. 123 (1968) (confession of co-defendant at joint trial); *Marshall v. Lonberger*, 459 U.S. 422 (1983) (aggravating prior convictions to permit sentence of death in single phase trial); *Stewart v. Cowan*, 528 F 2d 79 (6th Cir. 1976) (anonymous phone calls to police identifying the defendant as the perpetrator). None of those categories, however, are similar to the ubiquitous category of "prosecutorial argument"—the category of "improper" evidence at issue here.

Perhaps the most significant flaw in Petitioner's argument is that his premise is false.  The trial court did not wait until after closing arguments to instruct the jury that arguments were not evidence.  The trial instructed the jury that opening statements and closing arguments were not evidence immediately after the jury was sworn on the first day of trial.  (Trial Tr. I, ECF No. 10-5, PageID.232.)

Without regard to the timing of the court's cautionary instruction, there is no dispute that the instruction was given.  Moreover, notwithstanding Justice Jackson's cynical view of the value of such instructions as expressed in *Krulewitch*, it is clearly established federal law that "[a] jury is presumed to follow its instructions."  *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Therefore, Petitioner has failed to show that the state appellate court's determination is contrary to, or an unreasonable application of, clearly established federal law, and he is not entitled to habeas relief.

---

[6] It must be noted that this bon mot from *Krulewitch* is not "clearly established federal law."  It appears in the concurring opinion of Justice Jackson.  He was joined by only two other justices.

## VII.    Unfairness of alternate theories

Petitioner next contends:

[H]is Due Process rights were violated when the prosecutor presented four sep[a]rate witnesses all of which presented sep[a]rate sets of facts tending to present two distinct, and sep[a]rate, theories of this case.  To believe either theory you have to disbelieve the other theory.  One discounts the other and so forth.  So what the prosecutor did, in Defendant's case, is to take pieces, supporting his case, from each of the alternate theories, meld them together as one coherent theory, and present that theory to the jury during his closing argument.  Either theory, presented by the witnesses, standing alone was not sufficient to support Defendant's conviction.  However, when you take pieces from both theories, marry those pieces together, you give birth to an entirely independent theory that tends to support the prosecutor's case.

(Pet'r's Br., ECF No. 4, PageID.45.)   Petitioner then refers the Court to his state appellate pleadings.  In his Standard 4 brief, Petitioner elaborates: "In the first version the victim is pulled outside backwards by her hair in the presence of only one other witness, (tr. Vol. I, 233) while in the other she steps outside in the presence of 3 witnesses who do not see any pulling of her hair, (tr. Vol II, 69; 100; 119) but they nonetheless conclude she was pulled forward from an unspecified location on the front of her body. (tr. Vol. II, 60; 102; 115)[.]"  (Pet'r's Standard 4 Br., ECF No. 10-8, PageID.377.)  Petitioner then describes the various accounts as "inherently irreconcilable." (*Id.*, PageID.378.)

Petitioner's "alternate theories" argument, upon closer examination, is simply an echo of his insufficient evidence claim.    This argument meets the same fate.   There are unquestionably inconsistencies between the accounts—although the inconsistencies are hardly as troubling as Petitioner suggests.  It was the jury's charge to resolve those inconsistencies.  Despite the inconsistencies, however, the state court determined, and the undersigned agrees, there was sufficient evidence presented that the jury could "reasonably infer . . . that defendant intended to cause [Amber] great bodily harm, and that his actions caused her injuries."  (Mich. Ct. App. Op.,

ECF No. 10-8, PageID.330.)  That determination is consistent with, and a reasonable application of, *Jackson v. Virginia*, the clearly established federal law regarding sufficiency of the evidence. Accordingly, Petitioner is not entitled to habeas relief.

### VIII.   Ineffective assistance of trial counsel

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*,

131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner identifies five specific instances of ineffective assistance of counsel.

A.    Counsel allowed evidence regarding Petitioner's request to have counsel present during questioning to be suppressed

This case presents the unusual circumstance where *the Defendant* sought to introduce into evidence the fact that he wanted counsel present before he would respond to police questions.  The prosecutor objected to that line of questioning.  The trial transcript indicates some type of bench conference.  There is no record of that conference.  It is apparent, however, that the court did not permit defense counsel to present evidence that Petitioner requested counsel.  The court specifically directed the jury to disregard the question and the answer.

The court ruled against the admission of that evidence.[7]  The fact that counsel did not prevail does not mean his assistance was ineffective.  Once the court ruled against him, counsel's failure to press the matter further does not constitute ineffective assistance.  At that point continuing to attempt to admit such evidence would have been futile.  It is not ineffective assistance

---

[7] The fact that there is no clearly established federal constitutional barrier to the admission of such evidence does not mean there is no barrier at all.  Indeed, in *Jenkins v. Anderson*, 447 U.S. 231 (1980), the Supreme Court noted that jurisdictions remain free to formulate evidentiary rules defining situations in which the exercise of *Miranda* rights pre-arrest, in that case silence, is viewed as more probative than prejudicial or, presumably, *vice versa*.  States have taken up that invitation, providing greater protection for the privilege against self-incrimination than afforded under the federal constitution.  *See, e.g., State v. O'Neill*, 936 A.2d 438, 454-55 (N.J. 2007) ("Thus, for example, unlike the Fifth Amendment, our state law privilege prohibits the prosecution from using a suspect's silence 'at or near' the time of his arrest against him.").

26

to fail to press a futile argument.  *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir.1996), *overruled on other grounds by Abdur'Rahman v. Bell*, 392 F.3d 174 (6th Cir.2004).

        B.      <u>Counsel failed to object when the prosecutor argued facts not in evidence, specifically that Petitioner admitted to Ms. Blevins that Petitioner had thrown Amber down the stairs</u>

Petitioner contends that his counsel was ineffective because counsel failed to object when the prosecutor, in closing argument, stated that Ms. Blevins testified that Petitioner admitted that Petitioner had thrown Amber down the stairs.  Neither the argument nor the testimony is as clear as Petitioner suggests.

The prosecutor argued:

> Defendant goes over to Sponge Bob's house . . . [a]nd . . . talks to Ms. Blevins, and he says that he is sorry about what happened.  He is sorry, he expressly says, for what happens with him and Amber out on the platform by the stairs, and he says it went further than he meant for it to go.

> He said there was a mutual confrontation.  He talked about putting hands on each other, but all of the witnesses belie that assertion, okay.  He is covering for himself at that point.  Nobody, nobody says Amber ever laid a hand on him, so he's clearly shading that apology in his favor to mitigate his own, to lessen his own responsibility, but he admits—admits to putting hand on Amber immediately before she is tossed down the stairs.

(Trial Tr. II, ECF No. 10-6, PageID.305.)  Ms. Blevins testified:

> Prosecutor:            All right.  At some point in that morning, did the Defendant come over to your home?

> Ms. Blevins:          Yeah, he did.

> Prosecutor:            And did he, in some way, apologize for what happened to Amber?

> Ms. Blevins:          Yes he did.

> Prosecutor:            What did he say?

> Ms. Blevins:          He told me that he wanted to apologize, and he wanted me to let my son know to let the people at Anna May's house,

|  | you know, Anna May's where it happened at, that he did apologize for it because he didn't—he didn't intend for it to go as far as what it did.  And that they had got in an altercation that he said/she says. . . . |
|---|---|
| Defense counsel: | The apology that he made was in general.  It wasn't about specific actions, correct? |
| Ms. Blevins: | No. He apologized. They had gotten into an argument and then— |
| Defense counsel: | Okay. |
| Ms. Blevins: | --that—that—she and he got into a hands-on.  And then— but he apologized because he didn't—didn't—it wasn't supposed to happen the way it did or end up the way it did, and he apologized and wanted me to pass it on. . . . |
| Prosecutor: | Just to be clear, ma'am, the Defendant told you that Amber had hit him that night? |
| Ms. Blevins: | He told me that they both—he said that they both had said things to each other and that when he had went outside on the porch, she had followed.  And then they—the altercation. Her hands, his hands, and then she had fallen down. |

(Trial Tr. II, ECF No. 10-6, PageID.283.)

Clearly, Ms. Blevins did not testify that Petitioner admitted that he had thrown Amber down the stairs.  The admission is that Petitioner had his hands on Amber.  The admission, to the extent it went beyond having hands on Amber, is that "then she had fallen down."  (*Id*.)  The admission is not that Petitioner tossed Amber down the stairs or even that Amber is tossed down the stairs.  To the extent that the prosecutor intended to convey that Petitioner admitted as much, he is arguing facts not in evidence.

But that is not the only way to interpret the prosecutor's argument.  The prosecutor's statement can also be read as saying: Petitioner admitted he put hands on Amber. When did he put hands on Amber? Immediately before she is tossed down the stairs.  That appears

to be how the Michigan Court of Appeals interpreted the argument.  The court stated: "Defendant argues that the prosecutor improperly commented that defendant admitted to Laurie Blevins that he put his hands on Fountain, but Laurie Blevins testified to this fact."  (Mich. Ct. App. Op., ECF No. 10-8, PageID.333.)  The court of appeals does not even consider the propriety of the "tossed down the stairs" part of the argument.  Thus, when Petitioner challenged his counsel's failure to object, the court of appeals concluded his claim failed at the first prong of the Strickland analysis. The state appellate court concluded that counsel was not ineffective because any objection to the representation that Petitioner admitted he put his hands on Amber would have been futile.  (*Id*.)

Petitioner has failed to overcome the doubly deferential standard.  The analysis set forth in the paragraph above represents a reasonable argument that counsel satisfied the *Strickland* standard.  The AEDPA requires nothing more than that.  Even if this Court disagrees with the analysis and would analyze the argument and counsel's response differently, the undersigned cannot say that either the state court's determinations with regard to the prosecutor's argument or the state court's application of *Strickland* are unreasonable.[8]  Accordingly, Petitioner is not entitled to habeas relief on this claim.

C.    Counsel failed to explore with Amber that she was subjected to drug testing to maintain her parental rights and that CPS oversight provided Amber a reason to fabricate her story

Counsel asked Amber if she was smoking marijuana the night of the incident.  She replied: "No, I was on drops."[9]  (Trial Tr. I, ECF No. 10-5, PageID.266.)  Counsel asked why she was "on drops." The prosecutor objected on grounds of relevance.  The trial court sustained the

---

[8] Even if the undersigned concluded the appellate court's determination regarding the prosecutor's argument was unreasonable, the result would not change.  To prevail on either the prosecutorial misconduct claim or on the ineffective assistance claim, Petitioner must show prejudice.  The court's repeated caution to the jury that arguments are not evidence mitigated any prejudice from the overreach in the prosecutor's argument.

[9] On redirect, Amber explained that being "on drops" meant she had to pee in a cup for a drug test.  (Trial Tr. I, ECF No. 10-5, PageID.266.)

objection.[10]    Once the court ruled against him counsel's failure to press the matter further does not constitute ineffective assistance.  At that point continuing to attempt to admit such evidence would have been futile.  It is not ineffective assistance to fail to press a futile argument.  *See McQueen*, 99 F.3d at 1328.

>    D.    Counsel failed to explore with Ms. Blevins that Amber was a frequent drinker, hostile, and aggressive

Petitioner raises this specific argument for the first time in the brief in support of his habeas petition.  Petitioner argues:

> Counsel did not cross-exam[ine] Ms. Blevins concerning Ms. Fountain[']s frequent drinking and the hostility and aggression she frequently demonstrates when drinking. This would have tended to prove this Defendant's version of events that it was Ms. Fountain who had pursued him onto the stairs outside of the apartment and that it was she who had become physical with him.

(Pet'r's Br., ECF No. 4, PageID.50.)   Essentially, Petitioner wanted his counsel to use the testimony of Ms. Blevins to prove the character of Ms. Fountain in order to show action in conformity therewith during the early morning hours of May 22, 2013.  Such testimony, offered for the purpose Petitioner identifies, is inadmissible under Michigan Rule of Evidence 404(b)(1).  Counsel's attempt to elicit such testimony would have been futile.  Thus, counsel's failure to explore the issue with Ms. Blevins was not professionally unreasonable.

Even if it were unreasonable for counsel to forego that line of inquiry with Ms. Blevins, Petitioner has failed to show any resulting prejudice.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an

---

[10] The Michigan Court of Appeals affirmed the trial court's determination that the evidence was not admissible: "This evidence [that Fountain was required to undergo drug testing because of her involvement with Child Protective Services] was not relevant because it had no bearing on defendant's guilt or innocence and did not implicate Fountain's credibility as a witness."  (Mich. Ct. App. Op., ECF No. 10-8, PageID.333.)

ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[11]  Petitioner offers nothing more than speculation here.

> E.    <u>Counsel told the jury only Amber would say that Petitioner assaulted her when, if counsel had investigated the case, he would have known that the Claudio brothers would say so as well</u>

During Petitioner's counsel's opening argument, counsel stated: "There is only one witness that we believe will say that Travis Davis-Rowland assaulted Amber Fountain, and that is Amber herself."  (Trial Tr. I, ECF No. 10-5, PageID.237.)   Petitioner contends that the trial testimony of the Claudio brothers proved counsel's assertion to be false.  Therefore, Petitioner reasons, his counsel must have failed to investigate the testimony the Claudio brothers would provide.  Accordingly, Petitioner argues, his counsel rendered ineffective assistance.

The judges on Petitioner's Michigan Court of Appeals panel were not convinced by his reasoning:

> Defendant claims that his attorney was unprepared for testimony that Xavier and Claudio saw Fountain struggling against a pull and saw the back half of her body before she fell.  To overcome the presumption of sound trial strategy, a defendant must show that his attorney's failure to prepare for witness testimony

---

[11] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

> resulted in ignorance of evidence that would have substantially benefitted the defense. *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). At trial, defendant's attorney elicited testimony that none of the witnesses saw defendant's hands, and argued to the jury that the witnesses were each in a position where if physical contact had occurred between Fountain and defendant, the witnesses would have been able to see it. Defendant has not demonstrated that his trial counsel was unprepared.

(Mich. Ct. App. Op., ECF No. 10-8, PageID.333-334.) The appellate court readily recognized the strategy that Petitioner's counsel employed. Anna, Xavier, and Cristobal were all within a few feet of Amber when she went down the stairs; yet, not a single one of them could say he or she saw Petitioner lay a hand on Amber. Indeed, even Amber could not say that she saw Petitioner commit the assault. She testified that she felt a yank on her hair and that it must have been Petitioner because he was the only one there. (Trial Tr. I, ECF No. 10-5, PageID.261.) There was nothing more to her testimony. She felt the yank and then woke up in the hospital. (*Id*.) Neither Cristobal nor Xavier testified that they saw Petitioner take any action with respect to Amber. They testified that she pulled back and then was "yanked" forward. They surmised it was not a fall, but they could not say what caused it. Anna, who was closer to Amber than Cristobal or Xavier, did not see the cause either.

After all the testimony was in, Petitioner's counsel did not retreat from his opening assessment of the proofs. He argued in closing:

> Anna was placed almost immediately next to Amber. The two brothers were placed in this kitchen of a small apartment. And not one of those three were able to testify that they saw Travis grab at Amber. Not one of them testified that they saw him throw her down the stairs. Not one of them testified that they saw Travis drag her down the stairs. . . . Anna was right by the door, Xavier and [Cristobal] right behind her. And not one of them sees Amber physically assaulted. Not one of them sees Amber in any way taken by Travis and thrown down the stairs in the way that the prosecutor alleges.

(Trial Tr. II, ECF No. 10-6, PageID.308.)  Neither Xavier nor Cristobal offered any testimony that was inconsistent with counsel's opening statement.  To the contrary, their testimony confirmed counsel's description of the proofs.

Petitioner has failed to demonstrate that the state appellate court's determination of the facts is unreasonable on the record before this Court.  He has also failed to show that the state court's resolution of Petitioner's claim is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to habeas relief.

### IX.    Prosecutorial misconduct

To obtain habeas relief on the basis of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13;  *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487,

512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'"  *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).  Petitioner has failed to make the necessary showing.

In the petition, Petitioner focuses on two types of prosecutorial misconduct: (1) the suppression of exculpatory evidence; and (2) improper argument.  (Pet'r's Br., ECF No. 4, PageID.51-55)

### A.    Suppression of exculpatory evidence

Petitioner contends that the prosecutor suppressed evidence that Amber was required to undergo drug testing because of her involvement with Child Protective Services.  Petitioner characterizes this evidence as impeachment evidence and argues that the prosecutor is required to disclose it under *Brady*.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, as noted above, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch*, 466 F.3d at 474.  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *Clark*, 928 F.2d at 738.  "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose." *Bell*, 512 F.3d at 235 (internal quotations omitted).

Petitioner's *Brady* claim fails on at least two levels.  It fails first because, contrary to Petitioner's bald assertion, evidence regarding the victim's involvement with Child Protective Services does not impeach her credibility.  It may reflect poorly on her performance as a parent, but Petitioner offers no explanation as to how the evidence would "pertain to the lack of credibility of any witness." *United States v. Knowles*, 623 F.3d 381, 388 (6th Cir. 2010); *see also Bagley*, 473 U.S. at 676 ("In the present case, the prosecutor failed to disclose evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest.").  The Michigan Court of Appeal resolved Petitioner's claim on that basis. *See* n.10 *infra*.

Petitioner's claim also fails because he acknowledges he knew that she was "on drops" because of the involvement of Child Protective Services.  The victim testified to that fact at Petitioner's preliminary examination.  (Prelim. Exam. Tr., ECF No. 10-2, PageID.166-167.)

Petitioner's *Brady* claim is meritless.  The state appellate court's determination that the evidence was irrelevant to the victim's credibility was reasonable on this record.

B.    Improper argument

Finally, Petitioner contends that the prosecutor rendered Petitioner's trial constitutionally unfair when the prosecutor argued that Petitioner admitted to Ms. Blevins that he tossed Amber down the stairs.  (Pet'r's Br., ECF No. 4, PageID.54-55.)  Petitioner claims that the prosecutor's statement mischaracterizes the evidence.  This is the same argument Petitioner raised under a claim that his counsel rendered ineffective assistance because counsel failed to object to the argument.  *See* § VIII C, *infra*.

It is unquestionably improper for a prosecutor to argue facts not in evidence.  *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).   Nonetheless, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

The Michigan Court of Appeals concluded that Petitioner was misreading the prosecutor's argument.  The court's description of the problem and its resolution reveals that the court read the prosecutor's statement regarding Petitioner's admission to Ms. Blevins as relating only to the fact that Petitioner put hands on Amber, not that he tossed her down the stairs.[12]  As explained above, that is not the only way to read the prosecutor's argument; but, it is certainly a valid way to read the argument.  More importantly, the state appellate court's resolution is not "'so lacking in justification that there was an error well understood and comprehended in existing law

---

[12]"Defendant argues that the prosecutor improperly commented that defendant admitted to Laurie Blevins that he put his hands on Fountain, but Laurie Blevins testified to this fact."  (Mich. Ct. App. Op., ECF No. 10-8, PageID.333.)

beyond any possibility for fairminded disagreement.'"  *Parker*, 567 U.S. at 47.  For that reason, Petitioner is not entitled to habeas relief.

## **Certificate of Appealability**

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:   __January 12, 2018__            __/s/ Ellen S. Carmody_____
                                         Ellen S. Carmody
                                         United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).